UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORLANDO ACOSTA VALDOVINOS, | Case No. 1:17-cv-1591-AWI-JDP (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS THAT COURT DENY PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JOHN SUTTON, | ECF No. 1 |
| Respondent. | OBJECTIONS DUE IN 14 DAYS |

Petitioner Orlando Acosta Valdovinos, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. This case requires us to decide whether the jury had enough evidence to find that petitioner caused great bodily injury when he shot a police officer. Petitioner's bullet passed through the officer's left shoulder, tore muscle tissues, and exited the body. The bullet hit no bone, and other than a dosage of morphine at the scene of the shooting, the officer took no pain medicine. Because a reasonable jurist could find enough evidence to support the jury's finding of great bodily injury, we recommend that the court deny the petition.

**I.  Background**

Petitioner threatened to kill his wife after allegedly finding pornography on her cellphone. Someone called the police, and when officers arrived, petitioner fired a pistol three times, hitting an officer in the shoulder. The jury found petitioner guilty of one count of attempted murder of a peace officer, one count of assaulting a peace officer with a firearm, and one count of making a

criminal threat. *See* Cal. Pen. Code §§ 187(a), 245(d)(1), 422, 664. For the attempted murder and assault convictions, the jury also found that petitioner had intentionally discharged a firearm and caused great bodily injury to the victim. *See* § 12022.53(d). For the attempted murder conviction, the state trial court sentenced petitioner to life in prison with the possibility of parole after seven years, plus twenty-five years to life for discharging a firearm and causing great bodily injury. For the criminal threat conviction, the court sentenced petitioner to three years plus four years in prison. The court stayed execution of punishment on the assault conviction.

We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal, Fifth District ("Court of Appeal"). A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

### I. Prosecution's case-in-chief

> On December 21, 2014, at or around 4:00 a.m., defendant and his wife Yolanda Rosales returned to their apartment in Arvin. They had been drinking beer with friends and were intoxicated. Approximately two hours after she fell asleep, Rosales was awakened by defendant. He was simultaneously holding her cell phone and pointing a gun at her. Defendant told Rosales he found "[p]orn stuff" on her phone, called her a "bitch," and stated she was "gonna die right now." Rosales screamed. Defendant remarked, "Just watch, you bitch, and stop yelling, 'cause they're going to call the cops . . . ." He also indicated he would "confront" the police if they showed up.
>
> At trial, Rosales testified defendant did not expressly say the word "confront" and she "wasn't using his [exact] words." When the court asked her what she meant by "confront," Rosales replied, "That [defendant] was going to talk to them. . . . Like he was gonna go open the door."
>
> Officers Jeffrey Packebush and Brett Barker arrived at the apartment at or around 6:05 a.m. in response to a noise disturbance call. Rosales answered Packebush's knock on the door and said, "Take him, take him." She "was crying" and her face "was very red." Packebush encountered defendant, who was in the hallway of the apartment. Defendant concealed his right hand behind his back. Packebush ordered him to show both hands, but he did not comply. When Packebush grasped defendant's left wrist, defendant produced a black semiautomatic pistol from behind his back. He pointed the weapon at Packebush's head. Packebush "slapped the pistol away [from his face] with the back of [his] left hand" "to the left" and "moved [his] head to the right." Defendant fired and a bullet struck Packebush's left shoulder, which caused a "significant[]" "burning sensation" and loss of blood. Defendant fired additional shots before he was eventually disarmed and

2

> subdued.
>
> Paramedics treated Packebush at the scene. The wound was "through-and-through": the bullet "entered and exited through [the] body," "tear [ing] . . . muscle tissue," but "[d]idn't hit any bones." Packebush was given a dose of morphine for the pain, which he described as "moderate[]." He did not receive any stitches. Thereafter, he experienced bruising, swelling, and sensitivity to touch, but the residual pain "did not linger for very much at all."
>
> At trial, Packebush testified he was prescribed pain medication for his injury. However, he refused to take it because "[his] father was an addict" and "[he]'d rather tolerate a little bit of pain than use painkillers." Packebush's left shoulder was no longer "[at] 100 percent," which adversely affected his ability to participate in contact sports. As a result, he stopped playing football permanently. Before the injury, Packebush played in a semi-professional football league for approximately seven years.
>
> **II. Defense's case-in-chief**
>
> Defendant confirmed he and Rosales had been drinking beer with friends prior to the incident. He had also smoked crystal methamphetamine. After defendant and Rosales returned to their apartment, they went to bed. However, defendant could not fall asleep. He then ingested more methamphetamine. Due to the drugs, defendant became distrustful of Rosales and "thought that she was hiding something from [him]." He checked her phone, found "[p]ornographic pages" and concluded she "was cheating on [him]." Defendant woke up Rosales and an argument ensued. He denied threatening to kill her. As the pair continued to bicker, defendant retrieved his firearm. He testified he was going to his job at a cherry tree ranch and needed his gun because "[he] ha[d] some personal problems" and the worksite was "an isolated place."
>
> Before defendant could leave the apartment, he heard a knock on the door. He hid the gun behind his back as Rosales was opening the door. Defendant saw Packebush and decided he wanted the officer "to fire at [him]." He pointed the gun at Packebush when the latter stood about two feet away. When Packebush swatted defendant's hand, the gun accidentally discharged. Defendant did not remember pulling the trigger. He did not intend to pull the trigger or kill Packebush.

*People v. Valdovinos*, No. F072041, 2017 WL 2793857, at *2 (Cal. Ct. App. June 28, 2017).

**II.     Discussion**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See* § 2254; *Harrington v.*

3

*Richter*, 562 U.S. 86, 97 (2011); *Woodford v. Garceau*, 538 U.S. 202, 206-08 (2003). To decide a Section 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court reviews the state court's decision under the deferential standard of Section 2254(d). Section 2254(d) precludes a federal court from granting habeas relief unless a state court's decision is (1) contrary to clearly established federal law, (2) a result of an unreasonable application of such law, or (3) based on an unreasonable determination of facts. *See* § 2254(d); *Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018). A state court's decision is contrary to clearly established federal law if it reaches a conclusion "opposite to" a holding of the United States Supreme Court or a conclusion that differs from the Supreme Court's precedent on "materially indistinguishable facts." *Soto v. Ryan*, 760 F.3d 947, 957 (9th Cir. 2014) (citation omitted). The state court's decision unreasonably applies clearly established federal law when the decision has "no reasonable basis." *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011). An unreasonable determination of facts occurs when a federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016). A federal habeas court has an obligation to consider arguments or theories that "could have supported a state court's decision." *See Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2557 (2018) (quoting *Richter*, 562 U.S. at 102). On all issues decided on the merits, the petitioner must show that the state court's decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Even when a state court does not explicitly address a petitioner's claims on the merits, a Section 2254 petitioner must satisfy a demanding standard to obtain habeas relief. When a state court gives no reason for denying a petitioner's habeas claim, a rebuttable presumption arises that the state court adjudicated the claim on the merits under Section 2254(d). *See Richter*, 562 U.S.

at 99.  And a federal habeas court's obligation to consider arguments or theories that could support a state court's decision extends to state-court decisions that offer no reasoning at all.  *See Sexton*, 138 S. Ct. at 2557.

If a state court denies a petitioner's habeas claim solely on a procedural ground, then Section 2254(d)'s deferential standard does not apply, *see Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016), but the petitioner faces another hurdle: if the state court's decision relies on a state procedural rule that is "firmly established and regularly followed," the petitioner has procedurally defaulted on his claim and cannot pursue habeas relief in federal court unless he shows that the federal court should excuse his procedural default.  *See Johnson v. Lee*, 136 S. Ct. 1802, 1804 (2016); *accord Runningeagle v. Ryan*, 825 F.3d 970, 978-79 (9th Cir. 2016).  If the petitioner has not pursued his habeas claim in state court at all, the claim is subject to dismissal for failure to exhaust state-court remedies.  *See Murray*, 882 F.3d at 807.

If obtaining habeas relief under Section 2254 is difficult, "that is because it was meant to be."  *Richter*, 562 U.S. at 102.  As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority."  *Id.* at 103 (citation omitted).  Our habeas review authority serves as a "guard against *extreme* malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Id.* at 102-03 (emphasis added).

Here, petitioner raises four habeas claims: (1) the jury had insufficient evidence that petitioner caused great bodily injury; (2) the state trial court erred by failing to give the jury a proper instruction on the definition of great bodily injury; (3) the prosecutor committed misconduct during closing argument by misstating certain evidence; and (4) the cumulative effect of the alleged errors warrants habeas relief.  The Court of Appeal rejected these claims on the merits.  The California Supreme Court summarily denied review.

**a. Insufficient Evidence**

During an encounter with Jeffrey Packebush, a police officer, petitioner fired at least three rounds.  Only one hit Packebush.  The bullet entered Packebush's body through his left shoulder,

tore muscle tissues, and exited through the back of his left shoulder. The bullet hit no bone. Packebush bled and felt some burning sensation. A paramedic administered a dosage of morphine at the scene of the shooting, but Packebush took no pain medicine afterward. On direct appeal, petitioner argued that the jury had insufficient evidence of great bodily injury. The Court of Appeal disagreed, explaining that the evidence supported the jury's finding under California law. The state court did not unreasonably reject petitioner's claim of insufficient evidence.[1]

Under the Fourteenth Amendment's Due Process Clause, no person can suffer a criminal conviction "except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). In the context of sentence enhancements, other than a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum" or "increases the mandatory minimum sentence" is "an element that must be submitted to the jury and proved beyond a reasonable doubt." *Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018); *accord Alleyne v. United States*, 570 U.S. 99, 102 (2013). Petitioner's sentence for attempted murder of a peace officer, life in prison with the possibility of parole after seven years, was enhanced by twenty-five years to life by the jury's great-bodily-injury finding. *See Valdovinos*, 2017 WL 2793857, at *1; Cal. Penal Code §§ 664(e)-(f), 12022.53(d). We therefore consider petitioner's great-bodily-injury enhancement as an essential element and apply the standards set forth in *Jackson v. Virginia*, 443 U.S. at 316, to his habeas

---

[1] We have some doubt whether this claim presents an evidentiary issue. The parties agree on what the evidence proved: petitioner shot a police officer at close range, causing the extent of the bodily injury elaborated on above. The parties instead dispute the legal significance of the agreed-upon facts: whether Packebush's injury constituted great bodily injury under California law. It appears to us that petitioner cannot prevail because California law determined what constituted great bodily injury, and an error of state law ordinarily does not warrant federal habeas relief. *See Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (noting that identifying "substantive elements" of an offense is a matter of state law while deciding whether the "minimum amount of evidence" supported the conviction is a question of federal law); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds the federal court on habeas review). In any event, this distinction is not dispositive here because petitioner cannot prevail even if we construe his claim as an evidentiary one, given the deferential standards governing the claim.

claim of insufficient evidence. *See Jackio v. Pfeiffer*, No. 2:16-cv-2812 WBS GGH, 2019 WL 130332, at *15 (E.D. Cal. Jan. 8, 2019) (applying *Jackson* framework to insufficient evidence claim involving California's great-bodily-injury enhancement under California Penal Code Section 12022.53(d)); *White v. Foulk*, No. 2:14-cv-845, 2016 WL 492794, at *11 (E.D. Cal. Feb. 9, 2016) (same).

A habeas petitioner challenging the sufficiency of evidence under *Jackson* must overcome "two layers of judicial deference." *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012). On direct appeal, the appellate court decides "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). On habeas review, the AEDPA's deferential standard applies, and a federal court may "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision was 'objectively unreasonable'" under the AEDPA. *Coleman*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). "Because rational people can sometimes disagree, the inevitable consequence of [the AEDPA standard] is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Cavazos*, 565 U.S. at 2.

Applying the doubly deferential standard, the federal habeas court examines state law to identify the substantive elements of the offense and turns to the federal question whether the state court's decision was "objectively unreasonable" in finding sufficient evidence. *Johnson*, 899 F.3d at 1056. Under the California Penal Code, the term "great bodily injury" means any "significant or substantial physical injury." Cal. Penal Code § 12022.7(f); *accord People v. Cross*, 45 Cal. 4th 58, 63 (2008). Great bodily injury "is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury." *Cross*, 45 Cal. 4th at 66. The victim need not suffer prolonged bodily injury, *id*. at 64, or loss of bodily function, *People v. Escobar*, 3 Cal. 4th 740, 750 (1992). The injury "need not meet any particular standard for severity or duration." *People v. Le*, 137 Cal. App. 4th 54, 59 (2006). Instead, "whether a victim has suffered physical harm amounting to great

7

bodily injury is . . . a factual inquiry to be resolved by the jury." *Cross*, 45 Cal. 4th at 64. Because a "fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description . . . [w]here to draw that line is for the jury to decide." *Id.* at 64.

Here, the Court of Appeal did not unreasonably conclude that there was enough evidence of great bodily injury. Packebush testified that petitioner had shot him in the left shoulder at close range—about six to seven inches. RT 3:393.[2] The bullet pierced Packebush's body, tearing muscle tissue. RT 3:403-11, 415-18. Packebush bled and felt a burning sensation. RT 3:394, 415, 446-47. The medic who arrived at the scene treated Packebush with morphine. RT 3:447. Packebush could no longer play football, a contact sport he had played for about seven years. RT 3:448. This was enough to show that petitioner caused great bodily injury. *See People v. Lopez*, 176 Cal. App. 3d 460, 462-65 (Cal. Ct. App. 1986) (finding great bodily injury after a gunshot victim felt "fire" when the bullet entered and exited her thigh).

Petitioner contends otherwise. He argues that the evidence could not show great bodily injury for nine reasons:

1. The bullet entered and exited Packebush's body without hitting any bone.
2. The shooting caused small entry and exit wounds.
3. Other than morphine, Packebush took no pain medicine.
4. Packebush had swelling, bruising, and sensitivity to touch that lasted briefly.
5. The wound required no follow-up treatment other than checking for infection.
6. Packebush's wound did not get infected.
7. Packebush could walk, stand, and sit unassisted.
8. The pain subsided to a moderate level after Packebush received morphine.
9. Packebush's wound required no hospitalization.

ECF No. 1 at 8-9. Petitioner cites no authority to support his view that a finding of great bodily injury required proof of any of the foregoing. A reasonable jurist could find that the evidence—a

---

[2] All "RT" citations refer to the reporter's transcript. All "CT" citations refer to the clerk's transcript. *See* ECF No. 12.

man being shot at close range and having a bullet pass through his body—supported the jury's finding of great bodily injury. The court should decline to grant habeas relief on petitioner's claim of insufficient evidence.

### b. Jury Instruction

Before closing arguments, petitioner asked the trial court to give "more concrete guidance to the jury" on the definition of "great bodily injury." CT 1:167. Petitioner proposed the following instruction:

> Great bodily injury includes, but is not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement.

CT 1:166.[3] The trial court declined to provide petitioner's proposed instruction and instead gave these pattern jury instructions:

> Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.
>
> Words and phrases not specifically defined in these instructions are to be applied using their ordinary, everyday meanings.

CT 1:195-96, 226; Judicial Council of Cal. Crim. Jury Instrs. 200, 3149 (CALCRIM Nos. 200, 3149). On direct appeal, petitioner argued that the trial court confused the jury by failing to give a proper instruction on the meaning of great bodily injury. The Court of Appeal disagreed, stating that the trial court's jury instructions comported with the law and that the trial court had no obligation to instruct the jury on the meaning of terms in common usage. *See Valdovinos*, 2017 WL 2793857, at *6.

Petitioner cannot prevail on this claim fails for two reasons. First, petitioner identifies no holding from the Supreme Court that supports his claim. Although petitioner states that the alleged instructional error violated his right to a jury trial and due process, ECF No. 1 at 14, we may not frame the Supreme Court's "precedents at such a high level of generality." *Lopez v.*

---

[3] This instruction tracked the statutory definition for "serious bodily injury" in the context of battery, except that petitioner replaced the terms "serious bodily injury" with the terms "great bodily injury." *See* California Penal Code § 243(f)(4).

9

*Smith*, 574 U.S. 1, 4 (2014) (citation omitted).  Only Supreme Court precedent addressing the "specific question presented by this case" can create a clearly established rule of federal law, *id.*, and petitioner has identified none.

Second, any error was harmless.  The standard from *Brecht v. Abrahamson*, 507 U.S. 619 (1993), governs our harmless-error inquiry.  *See Dixon v. Williams*, 750 F.3d 1027, 1034 (9th Cir. 2014) (per curiam).  Under *Brecht,* a petitioner can obtain federal habeas relief only if "the error had substantial and injurious effect or influence in determining the jury's verdict."  507 U.S. at 637.  To satisfy this standard, the court must have "grave doubt" as to the outcome, meaning that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  *See O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

Here, the record does not raise such grave doubt.  Petitioner's proposed jury instruction included the language, "Great bodily injury includes, *but is not limited to*, the following: bone fracture; protracted loss or impairment of function of any bodily member or organ . . . ." CT 1:166 (emphasis added).  Because the proposed instruction stated that great bodily injury was not limited to the various examples listed, a jury following the instruction would not have declined to find great bodily injury simply because Packebush had not suffered one of the listed examples of great bodily injuries.

We also address here an ancillary issue raised by petitioner.  During the deliberation, the jury asked the trial court for clarification on the definition of great bodily injury.  CT 1:296.  The trial court responded that the jury should consult CALCRIM Nos. 200 and 3149, the instructions discussed above, with the added emphasis that the words and phrases not defined carry "ordinary, everyday meanings."  RT 4:767-68.  At trial, petitioner did not object to the court's response or propose an alternative response.  He now argues that: (1) the jury needed more guidance and (2) the jury's request for clarification shows that the trial court's jurisdictional error was not harmless.  ECF No. 1 at 15.[4]  We reject both arguments.  First, we have found no authority under

---

[4] Petitioner does not identify the trial court's response as a basis for habeas relief; he instead discusses the trial court's response as part of his claim that the trial court erred in failing to provide a more specific jury instruction.

10

state or federal law that required the trial court to provide any more clarification; the trial court's response tracked the pertinent state law, as the Court of Appeal explained. *See Valdovinos*, 2017 WL 2793857, at *6. The jury asked a question; the trial court answered correctly.

Second, the fact that the jury asked for clarification does not raise grave doubt that undermines our confidence in the trial's outcome. Petitioner shot Packebush at close range, causing a bullet to pierce his body, and the court asked the jury to use the ordinary meaning of "great bodily injury" to decide whether the injury met the standard; this was not a hard call. Courts routinely require jurors to decide issues without giving concrete definitions of legal terms, allowing the jurors to decide matters case-by-case. It appears that the court purposefully—and not erroneously—declined to provide a concrete definition of great bodily injury, and we cannot conclude that the jury decided the issue in a way unintended by California law.

In sum, petitioner's second habeas claim is not cognizable, given the lack of Supreme Court precedent applicable here. Despite the lack of analytical framework, we have considered whether the alleged violation of federal law mattered. We conclude that it did not. The court should decline to grant habeas relief on this claim.

### c. Prosecutorial Misconduct

At trial, petitioner's wife, Yolanda Rosales, testified that petitioner said he would "confront" the police officers if they showed up. RT 3:352. The prosecutor offered this statement by petitioner as circumstantial evidence that petitioner intended to kill Packebush. But the prosecutor misstated the evidence at closing by stating that petitioner said he would kill the police officers:

> So let's look at the circumstantial evidence in support of the theory that this defendant intended to kill this victim. Well, let's start off with perhaps the most effective piece of evidence that we have. He said he was going to confront the cops. He was gonna shoot it out with the cops. I hope the cops don't come here. That's what he told Yolanda Rosales. . . .
>
> And he told her I'm gonna confront the cops if they show up. And she wanted the cops to show up. She was yelling so loud so that someone would call the cops. . . .
>
> When you saw the officers, when Yolanda opened the door, you could have walked back to the bedroom, put the gun away. Why

11

> wouldn't you do that? Because you had an intent to kill the officers. You wanted to settle the score.
>
> You know what, *I told you not to call the officers. If they show up here, I'll kill them.* She didn't call them, but someone else called them for her, and he did the very act that he said he would do. . . .
>
> Now, he thought someone had called the cops. . . . [W]hy would you mention that to Yolanda? *Why would you say if the cops show up I'm going to kill them?* I'm going to—pardon me. *He didn't say kill them.*
>
> I'm going to shoot it out with them. I'm going to confront them. Why would he say that? Because he thought there was a good chance because she was yelling so loud. . . .
>
> Did he pull the trigger of his own accord? Did he want to pull the trigger. Was that his intention?
>
> And we would argue that by telling Yolanda that he did want to confront the cops and that he was going to shoot it out with them, he did.

RT 4:627-36 (emphasis added). On direct appeal, petitioner argued that the prosecutor committed misconduct by mischaracterizing evidence. The Court of Appeal concluded the prosecutor did not commit misconduct, explaining that petitioner's statement supported the inference that he had the intent to kill the police. *See Valdovinos*, 2017 WL 2793857, at *7. Petitioner challenged the prosecutor's misstatement of the evidence—not what inference could be fairly drawn from petitioner's statement—but we need not decide whether the state court correctly characterized the issue because the misstatement of the evidence was harmless under the *Brecht* standard for two reasons.

First, the prosecutor's mistake does not raise grave doubt as to the outcome because the jury was unlikely to rely on the prosecutor's misstatement. The prosecutor admitted his mistake and clarified that petitioner said he would confront—not kill—the police. RT 4:635. The court also instructed the jury that the attorneys' arguments at closing are not evidence. CT 1:202. The jury, having heard the testimony of witnesses before closing, could infer that the prosecutor had made a mistake and give no weight to his misstatement of the evidence.

Second, the government had enough evidence of petitioner's intent to kill. Packebush testified that petitioner had aimed the pistol at his head—between the eyes—before he knocked

1  the pistol away.  *See* RT 3:393.  Although petitioner argued that he pulled the trigger by accident,

2  he fired the gun three times, according to his wife's testimony.  RT 3:367.  The jury could find

3  that petitioner had the intent to kill.  Because the prosecutor's mischaracterization of petitioner's

4  statement does not raise grave doubt, the court should decline to grant habeas relief on

5  petitioner's claim of prosecutor misconduct.

### d. Cumulative Effect of Errors

Petitioner states that the cumulative effect of alleged errors warrants habeas relief.  *See* ECF No. 1 at 23-24.  He does not develop his argument, and we decline to do so on behalf of petitioner.  *See Pliler v. Ford*, 542 U.S. 225, 226 (2004) (noting that judges, "impartial decisionmakers," may not give legal advice to pro se litigants).  No other claim remains.  We recommend that the court deny the petition in its entirety.

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances.  *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).  A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, petitioner has not made a substantial showing of the denial of a constitutional right.  Thus, the court should decline to issue a certificate of appealability.

### IV. Findings and Recommendations

We recommend that the court deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability.

These findings and recommendations are submitted to the U.S. District Court Judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The District Judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: May 13, 2019

UNITED STATES MAGISTRATE JUDGE

No. 202